IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mark Anthony Martucci, ) | C/A No. 0:15-1909-JMC-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Leroy Cartledge, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner Mark Anthony Martucci, a state prisoner represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Counsel for Martucci later amended the Petition. (ECF No. 13.) This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 23.) Counsel for Martucci filed a response in opposition (ECF Nos. 29 & 30), and the respondent replied (ECF No. 36). Having carefully considered the parties' submissions and the record in this case, the court finds that Martucci's Petition is barred by 28 U.S.C. § 2244(d) as untimely.

## BACKGROUND

Martucci was indicted in December 2003 in Greenville County for homicide by child abuse under circumstances manifesting an extreme indifference to human life (2003-GS-23-1312). (App. at 822-23, ECF No. 24-3 at 324-25.) Martucci was represented by Steven W. Sumner, Esquire, and Thomas J. Quinn, Esquire, and on February 6-9, 2006, was tried *in absentia* by a jury and found

guilty as charged.[1]  (App. at 693, ECF No. 24-3 at 194.)  The circuit court sentenced Martucci in his absence.  The sentence was unsealed on March 6, 2006, revealing a sentence of life imprisonment.  (App. at 708, ECF No. 24-3.)

Martucci timely appealed and was represented by Eleanor Duffy Cleary, Esquire, of the South Carolina Office of Appellate Defense, who filed a brief on Martucci's behalf.  (ECF No. 24-4.)  The State filed a response.  (ECF No. 24-5.)  On September 24, 2008, the South Carolina Court of Appeals affirmed Martucci's conviction and sentence.  (State v. Martucci, Op. No. 4438 (S.C. Ct. App. Sept. 24, 2008), ECF No. 24-6.)  Martucci filed a petition for a writ of certiorari (ECF No. 24-7) which was denied by the South Carolina Supreme Court by letter order filed October 7, 2009.  (ECF No. 24-9.)  The remittitur was issued on October 15, 2009.  (ECF No. 24-10.)

Martucci filed a *pro se* application for post-conviction relief ("PCR") on September 24, 2010.  (Martucci v. State of South Carolina, 10-CP-23-7981, App. at 710-29, ECF No. 24-3 at 212-31.)  On November 1, 2012, the PCR court held an evidentiary hearing at which Martucci appeared and testified and was represented by Joseph G. Armstrong, Esquire.  By order filed December 17, 2012, the PCR court denied and dismissed Martucci's PCR application with prejudice.  (App. at 803-10, ECF No. 24-3 at 305-12.)  Martucci filed a motion to alter or amend the PCR court's ruling, which was denied by order filed January 4, 2013.  (App. at 811-17, ECF No. 24-3 at 313-19; App. at 821, ECF No. 24-3 at 323.)

Martucci, represented by David Alexander, Esquire, Appellate Defender of the South Carolina Commission on Indigent Defense, filed a petition for a writ of certiorari on October 21,

---

[1] Martucci was jointly tried with codefendant Brandi Holder, the minor child's mother, who was also charged with homicide by child abuse.  Holder was found guilty as charged and received a sentence of twenty-five years' imprisonment.  State v. Holder, 676 S.E.2d 690 (S.C. 2009).



2013.  (ECF No. 24-11.)  On July 24, 2014, the South Carolina Supreme Court issued an order denying Martucci's petition for a writ of certiorari.  (ECF No. 24-14.)  The remittitur was issued August 11, 2014.  (ECF No. 24-15.)

Counsel for Martucci filed the instant Petition for a writ of habeas corpus on May 5, 2015.  (ECF No. 1.)

## FEDERAL HABEAS ISSUES

Martucci's federal Amended Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  The denial of Petitioner's motion to sever his trial from that of codefendant Ms. Holder, was an abuse of discretion by the trial court because it was unduly prejudicial to Petitioner, and prevented the jury from making an accurately informed assessment of Petitioner's guilt, which violated his constitutional right to a fair trial, pursuant to State v. Harris, 351 S.C. 643, 572 S.E.2d 267 (2002).  Ms. Holder's redacted statements incriminating Petitioner violated the Confrontation Clause pursuant to State v. Henson, 382 S.C. 278, 676 S.E.2d 690 (S.C. 2009).  The trial should have been severed because the State's case against him rested completely upon circumstantial evidence, and the evidence against Ms. Holder and her guilt spilled over into the jury's perception and assessment of Petitioner.  Additionally, Mr. Martucci was unable to call Ms. Holder as a witness to confront her about vindicatory first statement she gave to police and the four-wheeler story given to police.  A trial severance was also warranted because the court erroneously allowed the six week period of abuse contained only in Ms. Holder's indictment to be applied to Mr. Martucci.  Therefore, the State was allowed to admit evidence of alleged abuse by Petitioner far removed from the internal bleeding that caused Bobby's death.

**Ground Two:**  Petitioner's brother, Michael Martucci, can avouch that Petitioner was not the one who inflicted the fatal blows upon Bobby Holder in the evening of July 16th 2002, the day before he died.  Trial counsel should have called Michael Martucci to testify at trial because he can also testify to the abuse he witnessed Ms. Holder inflict on Bobby in public.  There were also other witnesses who could have corroborated the information in Michael Martucci's affidavit, as well as confirm that Petitioner was not with the victim the day of his death.  Their testimony would have helped exonerate Petitioner.

**Ground Three:**  There is evidence now that was not available for trial that would assist in exonerating Petitioner and would designate that Ms. Holder killed Bobby alone.  The evidence would also demonstrate that the State's key witness, Mr. Parker,



lied in his statements to police and at trial as to who was with Bobby the morning he died.

**Ground Four:** The life sentence is a violation of Petitioner's constitutional protection against cruel and unusual punishment because not only was there insufficient evidence to prove beyond a reasonable doubt that Bobby died from abuse by the Petitioner, but there is case law succeeding the Petitioner's conviction that exonerate Petitioner in that his actions did not constitute grounds for conviction of S.C. Code Ann. § 16-3-85(A)(1), or if granted a new trial, (A)(2).

**Ground Five:** The court allowed Mr. Parker to testify to Petitioner's character, prejudicing the Petitioner, thereby denying his constitutional right to a fair trial in violation of due process. The statements should have been stricken from the record because there is no evidence the character evidence fell under a permitted exception to Rule 404(b). There was also a lack of clear and convincing evidence that Petitioner committed the acts, and the prior acts were far removed from Bobby's cause of death.

**Ground Six:** Trial counsel failed to hire a child psychiatrist as an expert witness who would have testified that Petitioner did not abuse Bobby, and designate that Ms. Holder was Bobby's sole abuser. The testimony would have demonstrated that the State failed to present sufficient evidence beyond a reasonable doubt that Petitioner killed Bobby. Trial's counsel [*sic*] failure to call such an expert witness denied Petitioner a fair trial and violated his constitutional protection against ineffective counsel.

**Ground Seven:** The Court improperly allowed at trial a lay witness's opinion that was unduly prejudicial to Petitioner, in violation of SC Rule of Evidence 701. Counsel failed to object or move to strike it from the record. The improper testimony denied Petitioner's constitutional right to a fair trial in violation of due process. The Court also allowed other numerous irrelevant testimony and photographic evidence of injuries by an expert witness that had an inflammatory and prejudicial effect on the jury when in fact; [*sic*] only circumstantial evidence would connect Petitioner to their testimonies and photographic evidence. The admission of this evidence denied Petitioner his constitutional right to a fair trial, in violation of due process.

**Ground Eight:** Trial counsel failed to call an expert witness to testify to the extent of Bobby's injuries and their resulting appearance caused by CPR attempts by Petitioner and hospital staff. Because an expert witness did not explain this

consideration, (which would have limited the photographs' inflammatory effect on the injury) Petitioner suffered prejudice at trial. Thus, Petitioner's protection against ineffective counsel and his right to a fair trial were denied in violation of due process.

(Am. Pet., ECF No. 13-1.)

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Statute of Limitations**

The respondent argues that Martucci's Petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). Generally, the one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[2] 28 U.S.C. § 2244(d)(1)(A); see Gonzalez v. Thaler, 132 S. Ct. 641 (2012). Because Martucci petitioned the South Carolina Supreme Court for a writ of certiorari, Martucci's conviction became final ninety days after October 7, 2009, the date the South Carolina Supreme

---

[2] Neither party has provided any argument that the limitations period would run from any other date. Rather, both parties appear to rely exclusively on the limitations period running from the date established by § 2244(d)(1)(A).



Court dismissed the appeal.[3] See Gonzalez, 132 S. Ct. at 653-54 (holding that a judgment becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires"). Thus, his conviction became final on January 5, 2010. Accordingly, the limitations period began to run on January 6, 2010, and expired January 5, 2011, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2); see also Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000) (applying the anniversary date method in calculating the one-year limitation period in § 2244 and concluding that "the actual count on the limitations period began on April 25, 1996, and ended on April 24, 1997, excluding any time tolled").

Martucci filed his state PCR application on September 24, 2010. At that point, 261 days of non-tolled time had accrued since the period of limitations began to run. The period of limitations

---

[3] Because Martucci sought certiorari from the South Carolina Supreme Court, he is entitled to an additional tolled time period of ninety days in which to seek certiorari review from the United States Supreme Court. Hammond v. Hagan, C/A No. 4:07-1081-JFA, 2008 WL 2922860, at *3 (D.S.C. July 24, 2008); see also 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); U.S. Sup. Ct. R. 10(b) (stating that certiorari is considered where "state court of last resort" has decided an important federal question); U.S. Sup. Ct. R. 13 (stating that the time period for a petition for a writ of certiorari is 90 days from the decision or judgment of a state court of last resort). Further, the time to seek certiorari runs from the date of the decision rather than the date of the remittitur. See U.S. Sup. Ct. R. 13.3.



remained tolled during the pendency of the PCR action until August 11, 2014,[4] when the South Carolina Supreme Court issued the remittitur from its order denying Martucci's petition for a writ of certiorari.[5] At this time, Martucci had 104 days of statutory time remaining, which means that Martucci had until November 23, 2014 to file a timely federal habeas corpus petition. Martucci's

---

[4] Martucci appears to argue in his response in opposition that he is entitled to an additional ninety days of tolled time following the denial of his PCR application in which to petition the United States Supreme Court. (See Petr.'s Resp. Opp'n, ECF No. 29 at 3-4.) However, section "2244(d)(2) does not toll the limitations period from the time of denial of state habeas relief by the state high court until the time in which a petitioner could have petitioned the United States Supreme Court for certiorari." Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999). Contrary to § 2244(d)(1)(A), which takes into account the time for filing a certiorari petition in determining the finality of a conviction on direct review, § 2244(d)(2) contains no such provision but instead only tolls the period for a properly filed petition for "State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2); see also Duncan v. Walker, 531 U.S. 991 (2001) (interpreting the statutory language of § 2244(d)(2) so that "the word 'State' applies to the entire phrase 'post-conviction or other collateral review' "). Accordingly, a petition for writ of certiorari to the Supreme Court is not an application for "State" review that would toll the limitations period. See Crawley v. Catoe, 257 F.3d 395, 398-401 (4th Cir. 2001); see also Ott, 192 F.3d at 513 (reasoning that, as a state post-conviction application becomes final after a decision by the state's high court, requesting relief from the Supreme Court is not necessary for prosecuting state habeas relief and is irrelevant to federal habeas jurisdiction). "The very difference of wording in [§ 2244(d)(2) and § 2244(d)(1)(A)] indicates that they do not mean the same and is an indication that § 2244(d)(2) refers only to the state proceedings rather than to federal proceedings also." Crawley, 257 F.3d at 400. Accordingly, Martucci is not entitled to the additional tolled time that he seeks. Moreover, even if this time were to be included as tolled time in calculating Martucci's limitations period, Martucci's Petition would still be untimely.

[5] The respondent also included a calculation of Martucci's PCR action tolling the statutory deadline until the denial of certiorari on July 24, 2014. (See Respt.'s Mem. Supp. Summ. J., ECF No. 24 at 55-56.) The court has used the date that the remittitur was issued out of an abundance of caution. See Gonzalez, 132 S. Ct. at 654 n.10 (distinguishing between the provisions of § 2244(d)(2) and (d)(1)); see also Rule 221(b), SCACR.



federal Petition was filed on May 5, 2015[6]—over five months after the expiration of the statute of limitations.

**C.     Martucci's Response**

In response to the respondent's argument that his federal Petition was untimely filed, counsel for Martucci argues that Martucci is entitled to equitable tolling and that he is actually innocent of the crime. (Petr.'s Resp. Opp'n Summ. J., ECF No. 29 at 4-14.)

**1.     Equitable Tolling**

To avoid application of § 2244(d) regarding the timeliness of the instant federal habeas Petition, Martucci must show that the one-year limitations period should be equitably tolled under applicable federal law. See Holland v. Florida, 560 U.S. 631 (2010) (concluding that § 2244(d) is subject to the principles of equitable tolling); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (same). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citation omitted); see also Holland, 560 U.S. at 649. Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to

---

[6] Because Martucci was represented by counsel at the time his federal petition was filed, he is not entitled to the benefit of the holding in Houston v. Lack.  See Houston v. Lack, 487 U.S. 266 (1988) (stating that a *pro se* prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (holding that the "mailbox rule" is not available to a petitioner represented by counsel); Rutledge v. United States, 230 F.3d 1041 (7th Cir. 2000) (same); Turner v. Singletary, 46 F. Supp. 2d 1238 (N.D. Fla. 1999) (same).  Accordingly, Martucci cannot rely on the date that he signed his Petition—April 7, 2015—as the filing date with the federal district court. Even considering the date that Martucci signed his Petition, however, would not render Martucci's Petition timely filed within the applicable statute of limitations.



enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (*en banc*) (internal quotation marks and citation omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).  Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present:  "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246.

Counsel for Martucci argues that Martucci has been pursuing his rights diligently, and that any delay was due to Martucci's changing PCR attorneys and difficulties in obtaining documents from Martucci's trial counsel.  Additionally, counsel for Martucci alleges that Martucci is mentally impaired, and that this has caused difficulty communicating with counsel.[7]  However, Martucci raises all of these arguments exclusively in the context of explaining the eight-month period of time that it took to file his PCR application.  Martucci makes no argument as to why he waited over eight months *after the conclusion of his PCR action* to file his federal habeas petition.  Accordingly, Martucci has failed to provide sufficient information to demonstrate that he has been pursuing his rights diligently to timely file a federal habeas petition.  See Holland, 560 U.S. at 649; Pace, 544 U.S. at 418-19 (denying equitable tolling to a habeas petitioner who waited years to file his PCR

---

[7] As previously noted, Martucci is represented by counsel in this matter.  Thus, it is unclear how Martucci's mental condition prevented counsel from timely filing Martucci's habeas petition.  However, even when a petitioner is *not* represented by counsel, "the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004); see Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").  Counsel for Martucci has not asserted that Martucci's mental condition rises to this level.  Therefore, Martucci's mental condition does not entitle him to equitable tolling.



petition *and months after his PCR trial* to seek relief in federal court); Harris, 209 F.3d at 330 ("Under long-established principles, petitioner's lack of diligence precludes equity's operation."). As observed above, Martucci's federal habeas petition was filed by counsel. The court observes that attorney misconduct that is beyond a garden variety claim of attorney negligence may present a basis for equitable tolling. See Holland, 560 U.S. at 651-52. However, the allegations in this case do not support a finding of "egregious" misconduct by counsel sufficient to create an extraordinary circumstance that warrants equitable tolling. See Holland, 560 U.S. at 652 (finding that "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling") (internal quotations and citations omitted).

    2.    **Actual Innocence**

Counsel for Martucci also raises a claim of actual innocence based on exculpatory evidence that he alleges was not known to Martucci until July 2015. While the United States Supreme Court has held that "actual innocence, if proved, may serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations," the Court cautioned that "tenable actual-innocence gateway pleas are rare." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To present a credible claim of actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329; see House v. Bell, 547 U.S. 518, 538 (2006) (reiterating that the Schlup standard "is demanding and permits review only in the extraordinary



case") (internal quotations omitted). The McQuiggin Court also noted that " 'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence," and "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." McQuiggin, 133 S. Ct. at 1928, 1935 (quoting Schlup, 513 U.S. at 332) (alterations in original).

### a.     Background Pertinent to Actual Innocence Claim

On July 17, 2002, Martucci and John Parker brought Brandi Holder's two-and-a-half-year-old son to the emergency room. Emergency Room nurse Layde Kelly testified that the minor child appeared lifeless and that she assisted Dr. Kevin Gregg in trying to revive the minor child, but that they were unsuccessful. Both Dr. Gregg and Nurse Kelly testified that the minor child had bruises all over his body. Although Holder and Martucci initially maintained that the minor child had been injured in a four-wheeler all-terrain vehicle ("ATV") accident, Dr. Gregg testified that the minor child's injuries were inconsistent with the kind of accident described. Holder and Martucci were ultimately both charged with homicide by child abuse under circumstances manifesting an extreme indifference to human life. Both Holder and Martucci were found guilty as charged. Parker pled guilty to aiding and abetting homicide by child abuse.

Parker provided an initial statement to the police in which he stated that he had seen bruises on the minor child, but that he had never seen Martucci hit the minor child, and had only witnessed Holder hit the minor child once after the minor child bit her. (ECF No. 13-6 at 1-5.) Later that evening, Parker provided a second written statement in which he alleged that he had witnessed Martucci abusing the minor child over the last four or five weeks. (ECF No. 13-6 at 6-8.) Parker's statement provided specific details of this abuse, including that he had witnessed Martucci hit the



minor child in the face and head with his hands, tape the minor child's mouth shut when the minor child would not stop crying, and hold the minor child's head under water in the bathtub. (Id. at 6.) Parker also stated that he feared Martucci because of Martucci's bad temper. (Id.) At trial, Parker provided testimony consistent with his second statement.

### b. Martucci's Arguments

In his response in opposition to the respondent's motion for summary judgment, Martucci details trial counsel's allegedly dilatory conduct in complying with multiple requests to turn over documents and files associated with Martucci's trial, resulting in the eventual issuance of a subpoena for those documents. (See Petr.'s Resp. Opp'n Summ. J., ECF No. 29 at 5-7.) Counsel for Martucci alleges that, in July 2015, upon reviewing Martucci's file in trial counsel's possession, he discovered that trial counsel had not fully complied with the court's order compelling him to surrender Martucci's case file in that an exculpatory interview was discovered that had not previously been surrendered. Additionally, Martucci alleges that this interview was not presented as evidence at trial, and neither its existence nor its content was previously known to Martucci, his family, his PCR attorney, or his current counsel.

The interview at issue occurred between private investigator Gerald Raven and Parker in which Parker stated that "he never saw [Martucci] abuse [the minor child]. [Martucci] would play with [the minor child] real rough, but not hit him with his hand, fist or sticks." (ECF No. 29-2 at 2-3.) This interview took place on August 3, 2002—approximately two weeks after Parker gave his statement to the police indicating that he had witnessed Martucci physically abuse the minor child. During cross-examination at trial, Parker first testified that he recalled speaking to a private investigator approximately ten or fifteen days after giving statements to the police, but then testified



that he did not recall giving such a statement. (App. at 379, ECF No. 24-2 at 21.) The testimony at trial did not disclose any information regarding the content of the interview. Accordingly, counsel for Martucci argues that even though trial counsel possessed this evidence, it was not available or known to Martucci prior to its discovery by counsel in July 2015.[8]

Martucci's evidence fails to satisfy the Schlup standard, as it is insufficient to meet the requisite showing that it is more likely than not that no reasonable juror would have convicted Martucci in the light of the new evidence. Schlup, 513 U.S. at 327. Although the investigator's interview may impeach portions of Parker's testimony, ultimately, the question of Parker's credibility would have to be resolved by the jury.

Furthermore, the jury clearly weighed evidence presented at trial regarding Parker's credibility and the multiple inconsistent statements to police that he made throughout the investigation. At trial, Parker was cross-examined regarding his initial sworn statement in which he stated that he had never seen Martucci spank the minor child. (App. at 382-83, ECF No. 24-2 at 24-25.) Parker testified that portions of his first statement were a lie. (App. at 387, ECF No. 24-23 at

---

[8] The court observes that circuits are divided on whether the petitioner is required to present "newly discovered" evidence as opposed to evidence that is merely "newly presented." In those circuits in which the evidence must be newly discovered, for example, courts have ruled that evidence is not new if it was available at trial. See, e.g., Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004) ("A defendant's own late-proffered testimony is not 'new' because it was available at trial [and the defendant] merely chose not to present it to the jury."); Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005). Other circuits require only that the evidence be newly presented, noting that "[p]articularly in a case where the underlying constitutional violation claimed is the ineffective assistance of counsel premised on a failure to present evidence, a requirement that new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway." Gomez v. Jaimet, 350 F.3d 673, 679-80 (7th Cir. 2003) (internal footnote omitted); see also Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003). Even if this court were to consider Martucci's evidence, for the reasons that follow, Martucci cannot show that "it is more likely than not that no reasonable juror would have convicted him in [] light of the new evidence." Schlup, 513 U.S. at 327.



29.) Parker explained at trial that the reason that he lied in the first statement was because he was nervous and scared and that, when he realized "what had all happened," he decided to make a second statement. (App. at 386-87, ECF No. 24-2 at 28-29.) Parker's testimony at trial was consistent with his second sworn statement. Accordingly, the jury was aware that Parker had made at least one prior statement that Martucci had not struck the victim and that his trial testimony was inconsistent with that prior statement, and weighed his credibility accordingly. The court cannot say that knowledge of the contents of a similarly prior inconsistent statement to the private investigator would have precluded any reasonable juror from finding Martucci guilty beyond a reasonable doubt. See Schlup, 513 U.S. at 327.

Additionally, medical testimony from the emergency room doctor and nurse, as well as the chief medical examiner who performed the autopsy, was presented to the jury. This testimony showed that portions of Martucci's initial explanation regarding the four-wheeler ATV accident were inconsistent with the minor child's injuries. Moreover, Martucci's recounting that the minor child bit him on the lip when Martucci attempted to perform mouth to mouth resuscitation was deemed to be "very unusual." (App. at 162-63, ECF No. 24-1 at 164-65.) Medical testimony also described the injuries of the minor child in great detail to the jury and indicated that the autopsy showed multiple ages of trauma to the minor child's body, including injuries that were no more than a few hours old from the time Martucci and Parker brought the minor child to the emergency room. (See, e.g., App. at 208-09, ECF No. 24-1 at 211-12.)

The jury also considered the testimony of co-defendant Brandi Holder, who testified that she did not know of anyone abusing her child, that she had never physically abused her child, and that either Parker or Martucci must have caused the child's death. (App. at 555, 567, ECF No. 24-3 at



56, 68.) Holder also testified that she had made previous statements under oath, portions of which she recanted at trial. (App. at 567, ECF No. 24-3 at 68.)

Martucci's proffered evidence does not demonstrate "actual innocence" because he has not shown that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. It is the responsibility of the jury to weigh credibility and to resolve any conflicts in the evidence presented. See U.S. v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). Further, "if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Id. Accordingly, Martucci's argument that the investigator's interview would have impeached Parker's testimony such that no reasonable juror would have convicted Martucci is insufficient to convince the court that this is such an "extraordinary case" to justify applying the "extremely rare" actual innocence exception. Schlup, 513 U.S. at 321-22.

## RECOMMENDATION

Based upon the foregoing, the court finds that Martucci has failed to meet the demanding standard in raising an argument of actual innocence that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Accordingly, Martucci's actual innocence claim is insufficient to overcome the court's finding that his Petition was untimely filed and is therefore barred pursuant to § 2244(d)(1). Nor has Martucci presented grounds that would entitle him to equitable tolling. The court therefore recommends that

the respondent's motion for summary judgment (ECF No. 23) be granted and Martucci's Petition dismissed as untimely.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 20, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).