**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| Mark Anthony Martucci, ) | |
| ) | Civil Action No.: 0:15-cv-01909-JMC |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Warden Leroy Cartledge, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Petitioner Mark Anthony Martucci ("Petitioner") filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 alleging ten grounds for relief. (ECF No. 1.) Counsel for Petitioner later amended the Petition to clarify Petitioner's position. (ECF No. 13.) This matter is before the court on Respondent's Motion for Summary Judgment. (ECF No. 23.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, the matter was referred to United States Magistrate Judge Paige Gossett, for pre-trial handling. On April 20, 2016, the Magistrate Judge issued a Report and Recommendation ("Report") recommending the court grant Respondent's Motion for Summary Judgment and deny the Petition. (ECF No. 38.) This review considers Petitioner's Objections to Report and Recommendation Granting Summary Judgment ("Objections"), filed May 12, 2016. (ECF No. 44.) For the reasons stated herein, this court **ADOPTS** the Report of the Magistrate Judge.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the factual and procedural summation in the Magistrate Judge's Report is accurate, and the court adopts this summary as its own. (*See* ECF No. 38). The court will only recite herein facts pertinent to the analysis of Petitioner's Objections.

1

In December 2003, the Greenville County Grand Jury issued an indictment charging Petitioner with homicide by child abuse under circumstances manifesting an extreme indifference to human life. (ECF No. 38 at 1.) Petitioner was represented by counsel—Steven W. Sumner, Esquire, and Thomas J. Quinn, Esquire—and a jury trial was held from February 6-9, 2006. (*Id.*) Petitioner was tried *in absentia*, and the jury found Petitioner guilty as charged. (*Id.* at 2.) The circuit court sentenced Petitioner, who was absent, to life imprisonment. (*Id.*) Petitioner, represented by appellate counsel, timely appealed, and the South Carolina Court of Appeals affirmed his conviction and sentence. (*Id.*) On October 7, 2009, the South Carolina Supreme Court denied Petitioner's petition for writ of certiorari. (*Id.*)

Subsequently, on September 24, 2010, Petitioner filed a pro se application for post-conviction relief ("PCR"). (*Id.*) The PCR court held an evidentiary hearing at which Petitioner appeared and was represented by counsel. (*Id.*) Following the hearing, the PCR court denied and dismissed Petitioner's PCR application with prejudice. (*Id.*) The PCR court also denied Petitioner's subsequently filed motion to alter or amend on January 4, 2013. (*Id.*) Subsequently, Petitioner filed a petition for writ of certiorari, which was denied by the South Carolina Supreme Court on July 24, 2014. (*Id.* at 3.)

Petitioner, through counsel, filed the instant habeas petition on May 5, 2015, alleging ten grounds for relief. (*See* ECF No. 1.) Petitioner's counsel later filed an amended version of the habeas petition on July 22, 2015, alleging eight grounds for relief. (ECF No. 13.)  On October 2, 2015, Respondent filed a Motion for Summary Judgment and Return and Memorandum of Law in Support of Motion for Summary Judgment. (ECF Nos. 23, 24.) After receiving an extension from the court (ECF No. 26), Petitioner filed a response in opposition on January 5, 2016. (ECF No. 29.)

2

On April 20, 2016, the Magistrate Judge issued the Report recommending the court grant Respondent's Motion for Summary Judgment. (ECF No. 38.) The Magistrate Judge found that Petitioner's habeas petition was untimely because it had been filed over five months after the expiration of the statute of limitations. (*Id.* at 9.) Further, the Magistrate Judge concluded that Petitioner was not entitled to equitable tolling because although Petitioner alleged that his trial counsel may have hindered the filing of the initial PCR in circuit court by withholding Petitioner's files, Petitioner failed to allege how that initial hindrance prevented counsel from filing a timely habeas petition after the PCR appeal was denied. (*Id.* at 10.) Accordingly, the Magistrate Judge determined that Petitioner could not demonstrate that he had been diligently pursuing his rights to file a timely federal habeas petition. (*Id.*) Additionally, Petitioner raised a claim of actual innocence alleging that this court could still review the merits of his habeas petition despite the expiration of the statute of limitations. The Magistrate Judge determined that Petitioner's evidence in support of his claim of actual innocence failed to meet the standard set forth by the Supreme Court of the United States in *Schlup v. Delo*, 513 U.S. 298, 327 (1995). (ECF No. 38 at 14.) Thus, the Magistrate Judge found that the actual innocence exception would not be applicable such that it would overcome the court's finding that his petition was time-barred pursuant to 28 U.S.C. § 2244(d)(1). (*Id.* at 17.)

Petitioner timely filed his Objections on May 12, 2016. (ECF No. 44.)

## II. LEGAL STANDARD AND ANALYSIS

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423

U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636 (b)(1).

Objections to a Report and Recommendation must specifically identify portions of the Report and the basis for those objections. Fed. R. Civ. P. 72(b). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Failure to timely file specific written objections to a Report will result in a waiver of the right to appeal from an Order from the court based upon the Report. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). If the petitioner fails to properly object because the objections lack the requisite specificity, then *de novo* review by the court is not required.

Petitioner filed Objections to the Magistrate Judge's conclusions regarding equitable tolling and the application of the actual innocence exception. As such, this court is required to conduct a *de novo* review of Petitioner's specific objections. Petitioner objected to the Magistrate Judge's conclusion that he was not entitled to equitable tolling because he could not demonstrate that extraordinary circumstances prevented him from timely filing a federal habeas petition. Additionally, Petitioner objects to the Magistrate Judge's conclusion that he cannot meet the actual innocence standard set forth in *Schlup*. The court now turns to its discussion of Petitioner's Objections.

### 1. Equitable Tolling

First, Petitioner contends that the Magistrate Judge erred in determining that trial counsel's misconduct was not an extraordinary circumstance to warrant equitable tolling. (ECF No. 44 at 7.) Specifically, Petitioner alleges that for ten years trial counsel ignored and refused repeated requests by Petitioner, his family, and later PCR counsel to return evidence that had been gathered for trial. (*Id.* at 8.) PCR counsel eventually issued a subpoena, which trial counsel responded to after eight months allegedly causing the eight month delay in the filing of the original PCR. (*Id.*) Petitioner alleges that he later learned that trial counsel did not fully comply with the subpoena because new evidence was discovered in July of 2015 that had not been disclosed in response to PCR counsel's subpoena. (*Id.*) As such, Petitioner contends that trial counsel's willful refusal to return evidence gathered for trial after repeated requests amounts to the willful misconduct that courts have found to warrant equitable tolling. (*Id.*) Second, Petitioner contends that the Magistrate Judge erred in determining that trial counsel's alleged misconduct did not cause the untimeliness of Petitioner's habeas petition. (*Id.* at 11.) According to Petitioner, there is a nexus between trial counsel's misconduct causing the delay in filing the PCR petition and any untimeliness of the current petition. (*Id.*)

A habeas petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Habeas petitioners must bear the risk of attorney error, and "garden variety" claims of excusable neglect "such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling." *Id.* (internal citations and quotations omitted).

In *Holland*, a state prisoner convicted of first-degree murder and sentenced to death was appointed an attorney to represent him in state and federal post-conviction proceedings after his direct appeal was unsuccessful. *Id.* at 635-36. Twelve days prior to the expiration of the one-year statute of limitations for filing a federal habeas petition, his appointed counsel filed a motion for post-conviction relief in state court. *Id.* For three years, the prisoner's petition remained pending in the state courts, and pursuant to 28 U.S.C. § 2244(d)(2) that time was not included in the calculation of the statute of limitations. *Id.* During that time, the prisoner wrote multiple letters to his attorney to ensure that his claims would be preserved for federal review. *Id.* In 2003, the state trial court denied the prisoner relief, and his appointed counsel appealed the denial to the Florida Supreme Court. *Id.* For two years, the prisoner's petition remained pending before the Florida Supreme Court. *Id.* During that time, the prisoner wrote multiple letters to his attorney regarding his appeal, but the appointed counsel communicated with the prisoner only three times by letter between April 2003 and January 2006. *Id.* The prisoner wrote two letters to the Florida Supreme Court requesting that his appointed counsel be removed from the case. *Id.* at 637. He also wrote a number of letters to the clerk of the Florida Supreme Court, and filed a complaint with the Florida bar against his appointed counsel. *Id.* After his appointed counsel argued his appeal before the Florida Supreme Court, the prisoner wrote his counsel two letters specifically requesting that his attorney be prepared to file a timely 28 U.S.C § 2254 petition on his behalf if the Florida Supreme Court denied him post-conviction relief. *Id.* at 638. His attorney did not reply, and in November 2005, the Florida Supreme Court denied the prisoner relief. *Id.* On December 1, 2005, the final mandate was issued, and on December 13, 2005, the statute of limitations for filing the federal habeas petition expired. *Id.* The prisoner received no communication from his attorney and was not made aware of the Florida Supreme Court's decision until January 18, 2006, when he

6

was working in the prison library. *Id.* at 639. That same day, he drafted a pro se habeas petition, and mailed it to the Southern District of Florida the next day. *Id.* The court ultimately denied his petition as time-barred. The Supreme Court of the United States reversed the decision and remanded for the court to apply the appropriate legal standard consistent with its opinion. *Id.* at 652. In doing so, the Court acknowledged that the facts might suggest that the attorney's conduct was "far more than garden variety or excusable neglect." *Id.*

Here, Petitioner asserts that this court should find his trial counsel's neglect to turn over the files was more than "garden variety" neglect and amounted to misconduct. Although Petitioner alleges that he, his family, and PCR counsel unsuccessfully attempted to contact trial counsel for years regarding the retrieval of evidence, unlike the petitioner in *Holland*, there is no evidence of constant attempts by Petitioner to communicate with his counsel to no avail. Further, Petitioner has only provided evidence of one letter written by Petitioner's brother to trial counsel in August of 2014. (*See* ECF No. 29-1.) However, given that PCR counsel ultimately had to issue a subpoena to trial counsel in order to retrieve the files, the court is inclined to find that Petitioner attempted to pursue his post-conviction rights diligently. Despite finding that Petitioner diligently pursued his post-conviction rights, the court cannot find that an extraordinary circumstance prevented Petitioner from filing a timely petition. Even though Petitioner alleges that trial counsel's belated response to the subpoena delayed the filing of the state PCR petition by eight months, Petitioner still fails to explain what caused him to file a petition in federal court five months after the expiration of the statute of limitations. After the South Carolina Supreme Court denied his petition for certiorari, Petitioner had approximately three months to file a habeas petition in federal court, but he did not file it until nearly eight months later. Because federal courts can only conduct a habeas review of claims that were properly exhausted in state court—absent the discovery of new

7

evidence, which resets the statute of limitations period—Petitioner's habeas petition should not have contained any novel issues such that the petition could not have been completed within three months. Accordingly, the court finds that the Magistrate Judge properly concluded that Petitioner was not entitled to equitable tolling.

### 2. Actual Innocence

Finally, Petitioner contends that the Magistrate Judge erred in determining that Petitioner failed to meet the *Schlup* standard to demonstrate actual innocence. (*Id.* at 13.) Petitioner asserts that the contents of an interview subsequently conducted by a private investigator with John Parker—a man who lived with Petitioner at the time of the incident leading to his conviction—should have been presented as evidence at trial. Petitioner asserts that the interview is exculpatory, and if it had been presented at trial no reasonable jury could have found Petitioner guilty. (*Id.*) Petitioner contends that the Magistrate Judge erred when determining that the evidence was only impeachment evidence, at best, and the exclusion of the evidence was harmless because evidence that Parker gave inconsistent statements to law enforcement had already been presented to the jury such that they could make a determination regarding his credibility. (*Id.*) Petitioner contends that the interview is exculpatory because Petitioner's conviction hinged on circumstantial evidence and Parker's eyewitness testimony. (*Id.* at 15.) Further, Petitioner contends that the Magistrate Judge's determination that Parker's credibility had been resolved based on the inconsistency of statements to police fails to account for the fact that a court must review all evidence, both old and new, to determine whether the actual innocence exception applies. (*Id.* at 16.)

Pursuant to the "actual innocence" exception, federal courts may still review habeas petitions that are time-barred to prevent a miscarriage of justice if the petitioner demonstrates that "it is more likely than not that no reasonable juror would have convicted him in the light of the

8

new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In reviewing the new evidence, a district court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332.

### a. Facts Relevant to the Analysis

On July 17, 2002, Petitioner and John Parker—a friend of Petitioner who had been living with him for about three weeks—took Bo, the two-year old son of Petitioner's live-in girlfriend, to the emergency room of Allen-Bennet Hospital in Greenville. (R. 138-39.) The receiving nurse testified that Bo had multiple bruises all over his body that were in different stages of healing, his abdomen was swollen, he was pale, and appeared to have not been breathing. (R. 140-43.) The receiving nurse and the emergency room doctor attempted to revive Bo, but were unsuccessful. Petitioner and Parker told the doctor that Bo had been in a four-wheeler accident earlier in the week, but that he looked fine so no one took him to the hospital. (R. 154.) However, the day before they took him to the hospital, they noticed that Bo had been vomiting and was unresponsive. (R. 154.) Initially, both Parker and Brandi Holder, the child's mother, gave statements to the police indicating that Bo had never been abused, and that he was involved in a four-wheeler accident. Later, both parties recanted and provided statements to police detailing that Petitioner frequently abused Bo. In his statement to police, Petitioner indicated that he knew Holder was abusing Bo because Petitioner had noticed the bruises, but denied ever abusing Bo himself. (R. 420-22.)

At trial, Parker maintained that he had witnessed Petitioner abuse Bo on multiple occasions. Holder, recanted her second statement to police while on the stand. In addition to their testimony, the state presented testimony from neighbors who had noticed that Bo was afraid of women and always had bruises that his mother could not properly explain. Additionally, the pathologist who performed the autopsy testified that Bo died as a result of blunt force trauma to the abdomen. (R.

9

226.) The pathologist further testified that Bo had received two major traumas to the abdomen, but could have survived the first one had he received treatment. (R. 227.) Upon evaluation, the pathologist determined that Bo's injuries were the result of punching or stomping on Bo's abdomen and possibly his back. (R. 214-15.) Bo had sustained such trauma over a period of at least two days prior to his death that his abdominal cavity contained nearly a Coke can's worth of blood, and the ligament which usually attaches the small intestine to the large intestine had been severed. (R. 212.) The pathologist further opined that the injuries Bo sustained could not have been sustained as the result of accidental falling while learning to walk. (R. 224.) Further, the injuries to his abdomen would have caused Bo to act differently and appear sick to those who were in contact with him. (R. 225.) Petitioner did not testify in his own defense because he was not present at trial. Ultimately, Petitioner was convicted of homicide by child abuse.

### b. Analysis of Objection

Petitioner presents notes of an interview conducted by a private investigator with John Parker in August of 2002. Although the notes were in possession of trial counsel, they were never used to impeach John Parker at trial, and Petitioner did not discover the notes until July of 2015. At any rate, Petitioner asserts that the newly discovered notes of the interview demonstrate that Parker's testimony lacked credibility such that no reasonable juror could have found Petitioner guilty of homicide by child abuse.

As a threshold matter, in general, newly discovered evidence consists of facts that were discovered since the trial. *See United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001). Further, a court must be able to infer that Petitioner worked diligently in an attempt to discover the new evidence. *Id.* Here, although Petitioner does not directly allege that the interview notes are newly discovered, Petitioner does attempt to demonstrate that he was not previously aware of the

10

existence of the interview notes. However, trial counsel specifically questioned Parker regarding whether he gave a statement to a private investigator in August of 2002. (R. 379.) Parker first testified that he did speak with a private investigator, but upon clarification, he indicated that he did not recall speaking to one. (*Id.*) Trial counsel moved on from that line of questioning to ask Parker about his inconsistent statements to police. (R. 379-388.) Accordingly, a careful review of the record should have put Petitioner and his subsequent counsel on notice that trial counsel possessed documentation of an interview between Parker and a private investigator. This testimonial evidence is not new. As such, Petitioner nor his counsel can demonstrate that they exercised diligence in reviewing the record and securing documentation discussed therein.

At any rate, even in considering the alleged new evidence, the court cannot find that Petitioner's claim rises to the *Schlup* standard. Petitioner was convicted of homicide by child abuse pursuant to S.C. Code Ann. § 16-3-85 (2003). Under the statute, "a person is guilty of homicide by child abuse if the person causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life." S.C. Code Ann. § 16-3-85(A)(1). Child abuse or neglect, as defined by the statute, includes acts and omissions that cause harm to the child's welfare. S.C. Code Ann. § 16-3-85(B)(1). Further, "harm" occurs when a person either "inflicts or allow to be inflicted upon the child physical injury, including injuries sustained as a result of excessive corporal punishment." S.C. Code Ann. § 16-3-85(B)(2).

Here, it is clear that Bo died as a result of injuries inflicted upon him by an adult. It is also clear that prior to his death, multiple adults noticed that Bo always had bruises on his body and that his mother never provided an adequate explanation. Petitioner provided a statement to police

11

asserting that although he never hurt Bo himself and never witnessed Holder severely discipline Bo, Petitioner noticed that Bo had multiple bruises and knew that Holder had inflicted the bruises.

At trial, Parker testified that he had witnessed Petitioner abuse Bo by taping his mouth shut, holding his head under water during bath time to keep him from crying, and slapping his face. (R. 358-60.) Parker also testified that he gave two different statements to police because he was scared during the first interview, but once the police confronted him indicating that they knew the four-wheeler story was false, he told the truth. (R. 380-86.) Parker was briefly questioned about making the statement to the private investigator, but was not questioned by trial counsel as to the contents. (R. 380.) In the statement to the investigator, which was given after his second statement to police and apparently not given under oath, Parker informed the private investigator that he never saw Petitioner abuse Bo. (ECF No. 29-2.) He also declined to discuss what his testimony would be. (*Id.*) According to Petitioner, the statement Parker gave to the private investigator is exculpatory and if it had been presented to the jury, no reasonable juror could have convicted Petitioner. This court disagrees.

Under the homicide by child abuse statute, whether or not a person directly abuses a child is not dispositive. A person can be found guilty of homicide by child abuse if they allow a child to be injured and the failure to act causes harm to the child's welfare. Here, there is evidence that Petitioner was the primary caretaker of Bo. (R. 315-16, 321-22, 361-62.) As primary caretaker, Petitioner would have been responsible for bathing, changing, and dressing Bo. In so doing, he should have noticed the significant bruising to Bo's body, which Petitioner claims he did notice. Petitioner further indicated that he knew that Holder was the one causing injury to Bo. There is no evidence that Petitioner ever called the police, DSS, or attempted to intervene to prevent Holder from harming Bo. In the days leading up to his death, Bo appeared ill and was vomiting profusely,

12

and Petitioner did not seek help for Bo until after resuscitative efforts were required in an effort to keep Bo alive. Further, even though he knew resuscitative efforts were required because he had already attempted CPR himself, he did not call emergency services, and instead had Parker drive them in a van to the hospital. And, upon arrival, Petitioner crafted a false narrative to explain Bo's injuries instead of informing medical staff and police that he suspected that Bo had been abused. Thus, this court finds that on multiple occasions, Petitioner, as the primary caretaker of Bo, neglected to provide Bo with the necessary care in order to ensure his welfare, and as a result, Bo died. Even without Parker's testimony that Petitioner abused Bo, it is clear that Petitioner caused harm to Bo as defined by the statute whether or not he ever touched him. Accordingly, even in light of the alleged new evidence indicating that Parker struggled with veracity, this court finds that reasonable jurors could have found Petitioner guilty of homicide by child abuse. Thus, the Magistrate Judge properly concluded that Petitioner's claim of actual innocence fails to meet the *Schlup* standard. Therefore, the petition is time-barred and cannot be considered by this court.

### III. CONCLUSION

Based on the aforementioned reasons and a thorough review of the Report of the Magistrate Judge and the record in this case, the court **ADOPTS** the Report of the Magistrate Judge (ECF No. 38). It is therefore ordered that Respondent's Motion for Summary Judgment (ECF No. 23) is **GRANTED**, and this Petition (ECF No. 13) is **DISMISSED** with prejudice.

### Certificate of Appealability

The law governing certificates of appealability provides that:

(c)(2) A certificate of appealability may issue… only if the applicant has made a substantial showing of the denial of a constitutional right.
(c)(3) The certificate of appealability… shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists

would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the legal standard for the issuance of a certificate of appealability has not been met.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 12, 2016
Columbia, South Carolina

14